# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY DOBBS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 1:19-cv-01449-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

## **INTRODUCTION**

Plaintiff Jeremy Dobbs ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 7, 8, 20.)

the record and is not based upon proper legal standards. Accordingly, the Commissioner's determination will be reversed and remanded for further proceedings.

### FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits October 17, 2016. AR 202-03.[2] Plaintiff alleged that he became disabled on October 10, 2016, due to depression, anxiety, panic disorder, loss of memory, anorexia and rheumatoid arthritis. AR 202, 233. Plaintiff's application was denied initially and on reconsideration. AR 114-18, 122-26. Subsequently, Plaintiff requested a hearing before an administrative law judge ("ALJ"). ALJ William A. Kurlander held a hearing on December 12, 2018. AR 36-82. ALJ Kurlander issued an order denying benefits on May 14, 2019. AR 12-30. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing by video on December 12, 2018. Plaintiff appeared at the hearing with his attorney, Ms. Davis. AR 38. David M. Dettmer, an impartial vocational expert, also appeared and testified. AR 38.

In response to questions from the ALJ, Plaintiff testified that he was 37 years old and lived with his girlfriend because he does not have any income. His children, aged 19 and 15, live with them. His girlfriend works as a preschool teacher. Plaintiff has a driver's license and drives his son to and from school once a week. Plaintiff will also drive at night. If he is hurting, he will let his girlfriend drive. AR 42-45. Plaintiff testified that the most he drives is half of an hour. AR 47.

Plaintiff testified that he does not use a cane when he walks, but he has a wrist brace that he wears at night to straighten his left wrist. Plaintiff explained that it was assumed he had rheumatoid arthritis, but scheduled x-rays could change that diagnosis and it may be that he has an additional diagnosis. He has problems with his bones. They grind and lock and he wakes up with severe pain throughout his body in different places. His wrist is one of those places. Hi wrist locks up and has some numbing in it. AR 45-47.

---

[2]   References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   Plaintiff testified that he has problems reaching overhead with both of his arms. Lifting a
2 heavy object above his head is a problem. When buying pet food, he gets the smallest bag, nothing
3 over 10 pounds. AR 48.
4   Plaintiff reported that he graduated high school in 2000. He went to vocational school to
5 become a medical assistant. He graduated in 2005. AR 48-49.
6   When asked about his mental health issues, Plaintiff testified that he takes Ability and Lexapro.
7 He has anxiety, post-traumatic stress disorder, depression, and social anxiety. At one point, he had
8 suicidal thoughts. Plaintiff still has issues, but the suicidal tendencies and thoughts are no longer at
9 the forefront of his mind. He discontinued psychotropic medications for a period because his
10 insurance was cancelled. Once he got his insurance back, he had to get a new doctor to have his
11 prescriptions refilled. Plaintiff sees a doctor for mental health counseling once a month or every two
12 weeks. AR 49-50.
13   When asked about his past work, Plaintiff testified that in 2006 he was a medical assistant
14 responsible for vitals, injections, assisting with trach removals, sleep studies, spirometry, pulmonary
15 function tests and ear lavages. He then worked for a chiropractor and was responsible for rooming
16 patients, handling the books throughout the night, scheduling and pulling charts. They started cutting
17 hours at the chiropractor when business went down. It got to the point that he was working only four
18 or five hours a week, so they let him go. When he could no longer find work in the medical
19 profession, he went to work at Walmart. He jumped from hourly associate to manager. He eventually
20 was managing 60 associates and other managers. He was one of the highest paid hourly managers and
21 then they created a new position for him in charge of the modular. He was fired from Walmart
22 because he was in a verbal altercation with somebody who was going through and changing the books,
23 altering time adjustments and deleting days that people worked. The store manager was told that
24 Plaintiff was yelling and got in a verbal altercation, so they fired him. Plaintiff never yelled at the
25 person. AR 51-55.
26   When asked about why he could not work, Plaintiff testified that he has difficulty with
27 interpersonal relationships. He yells at everybody and does not get along well with people. AR 55-56.
28 He has "very, very bad anxiety issues. It's being around people." AR 56. When he goes to the store,

3

he has to have headphones in because of how he interacts with people.  He also has issues being in one place for one period of time.  He cannot sit and cannot stand.  He believed that he was unable to work due to both physical and psychological reasons.  He tried work.  When he worked at Walmart, he was feeling pain, which never goes away.  AR 56.  He walks with a limp and it gets worse through the week.  He cannot go up ladders and cannot pick up things.  Trying to figure out what is causing the pain has revealed more problems, finding tumors and masses on his spine, degenerative disc, osteoporosis.  He worries he is going to fall and hurt himself.  He has fallen and broken his leg and his doctor told him it is a real possibility now that if he falls, he can break something.  He does not want to risk that because he can barely ambulate.  AR 57.  He also has a broken pinky on his right hand and has no feeling his right hand.  AR 58.  The day before the hearing, he had cryotherapy on his hand because of cancerous masses.  He could not feel anything when they were burning and freezing his right hand because of nerve damage.  AR 58.  Trying to use a mouse or typing is difficult because he cannot always feel what he is pressing.  AR 58.

At the conclusion of the ALJ's questioning, the ALJ indicated that he would be ordering an additional consultative psychological examination.  AR 59.

In response to questions from his attorney, Plaintiff testified that his Lexapro and Ability help a little bit of the depression, but they do not help with his anger issues.  He has not had the medications a long period of time to see if they are going to help.  He was told that the Ability would help if the Lexapro was not.  He has been on depression medication off and on since 2006.  AR 59-60.

When he worked at the chiropractor, he was called into the office a few times because they told him he was difficult to approach or that he was lying to them about things that had occurred in the office.  Before he was fired from Walmart, he had been in trouble, but never written up.  AR 60-61.

When asked if he could do a job that required occasional contact with the public or coworkers, like a housekeeper, Plaintiff testified that he does not even clean his house.  The physical issues would keep him from doing the job.  He also could not do assembly work because he cannot do repetitive motion.  Repetitive motion causes pain and stiffness in his joints.  AR 61-62.

Plaintiff testified that he uses marijuana.  It helps with his anger issues.  It helps him eat.  It helps with the pain and helps him ambulate around the house.  He smokes every hour-and-a half to

two hours and then he is able to clean. It helps more than his Flexeril or his Abilify. He takes Flexeril one- or two-times day. He takes it at night so that it helps him not be as stiff when he wakes up. He sometimes will take it during the morning if he feels really bad. He does not like to take it during the day because it makes him walk around like a robot. When he smokes weed, he does not get high like everybody else and he does not smoke enough to be completely flat on the floor. He does it because he needs it to help with the pain. He does not mix his Flexeril with his marijuana. When he does not have the marijuana, he is in horrible shape. He does not eat, does not sleep, does not go anywhere and his girlfriend wants to kick him out of the house. AR 63-65. When the ALJ pointed out that Plaintiff had been diagnosed with cannabis induced anxiety disorder, Plaintiff testified that they never said that to him, nothing was ever explained to him about that and he would have to speak with his doctor. AR 65-66.

When asked how he would spend a typical day, Plaintiff testified that he wakes in the morning and makes sure that his son is ready, and his girlfriend is out the door. He will drink coffee and read the news for a little bit. When his back starts hurting, he will lie back down and take a nap until his girlfriend gets home. He will then get up and make dinner, read the new and go to bed about seven. He will wake up four to five times a night. AR 66.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE categorized Plaintiff's past work as a medical assistant, a department manager and a cashier-checker. AR 74-75. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to assume an individual of claimant's age, education and past work. The hypothetical individual also was limited to work at the light exertion level with the following additional limitations: No more than occasional postural activity, but no kneeling, no crawling and no climbing of ladders, ropes and scaffolds. No work at exposed heights and no more than occasional use of ramps and stairs. No more than frequent fingering and no overhead reaching bilaterally. No more than frequent work around moving machinery, no more than occasional exposure to temperature extremes, wetness and high humidity, and no more than frequent exposure to atmospheric irritants such as dust, fumes, odors and gases. The VE testified that Plaintiff's past work as a medical assistant would be available as normally and actually performed. AR 75-76.

For the second hypothetical, the ALJ asked the VE to consider the first hypothetical but add that the work must be routine and repetitive.  The hypothetical individual could be expected to be off task 5% of the time with no more than occasional interaction with coworkers and supervisors and no interaction with the general public.  The VE testified that there would be other work available at the light exertional level, such as photocopy-machine operator, mail clerk and hand packager.  The VE clarified that the job of hand packager exists at all exertional levels.  AR 76-77.  The VE also added that the position of inspector and hand packager would fit the hypothetical.  AR 78-79.  The VE indicated that his testimony with respect to time off task and directional reaching, which are not addressed by the Dictionary of Occupational Titles ("DOT"), was based on his professional experience and training.  AR 79-80.

Following the ALJ's questions, Plaintiff's attorney asked the VE to consider a hypothetical individual that was only able to interact with coworkers and the public 10% of the day, would be off task 15% of the day, and would only be able to accept instruction from supervisors 10% of the day.  The VE thought "it would be excessive time off task," so he "would not see employability."  AR 81.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 15-30.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 10, 2016, the alleged onset date.  AR 17.  The ALJ identified neck disorder, hip disorder, back disorder, possible rheumatoid arthritis, depression, anxiety, panic disorder, and social anxiety disorder as severe impairments.  AR 17-18.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 18-20.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, but he could do no more than occasional postural activities.  He also could not climb ladders, ropes, and scaffolds and no more than occasional use of

ramps and stairs.  He could not work at exposed heights.  He could do no more than frequent fingering and no more than occasional overhead reaching bilaterally.  He could have no more than frequent work around moving machinery, frequent exposure to atmospheric irritants such as dusts, fumes, odors and gases and occasional exposure to temperature extremes, wetness, and high humidity.  His work must be routine and repetitive and he would be expected to be off task five percent of the time.  Additionally, he could have no more than occasional interaction with coworkers and supervisors and no interaction with the public.  AR 20-27.  With this RFC, the ALJ found that Plaintiff was unable to perform any of his past relevant work, but there were other jobs in the national economy that he could perform, such as photocopy machine operator, mail clerk and hand packager.  AR 27-29.  The ALJ therefore concluded that Plaintiff had not been under a disability from October 10, 2016, through the date of the decision.  AR 29-30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

///

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

Plaintiff asserts that the ALJ erred by rejecting the opinions of the examining physicians, Marilyn Martinez, Ph.D., and Michael Musacco, Ph.D., and the error was not harmless because it directly resulted in a denial of disability benefits at Step Three of the sequential evaluation. Plaintiff also asserts that the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints. (Doc. 15 at 1-2.)

**A. Consultative Examiners – Dr. Martinez and Dr. Musacco**

Plaintiff first argues that the ALJ erred by rejecting the opinions of the examining physicians, Drs. Martinez and Musacco, without setting forth clear and convincing reasons supported by the record. (Doc. 15 at 10-18.)

Dr. Martinez

On February 13, 2017, Dr. Martinez completed a consultative mental status examination, which included a clinical interview and mental status examination. AR 444. On mental status examination, Plaintiff's presentation was consistent with the allegations and clinical findings. His attitude and degree of cooperation was adequate. There was no psychomotor agitation and no

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

8

psychomotor retardation.  Plaintiff appeared "genuine and truthful." AR 447.  There was "no evidence of exaggeration" and "no evidence of manipulation." AR 447.  Plaintiff's thought processing and organization were linear and within normal limits.  AR 447.  His mood was agitated and he "was irritated by others in the waiting room." AR 448.  His affect was blunted and congruent with thought content.  His memory functioning and fund of knowledge appeared intact.  His concentration and calculation appeared grossly intact and his abstract thinking appeared to be intact.  His judgment appeared intact, but his insight appeared to be limited.  AR 448-49. Dr. Martinez concluded that Plaintiff's presentation was consistent with a diagnosis of major depressive disorder and testing results suggested that Plaintiff had difficulty with sustained effort and attention due to depressive symptoms. Dr. Martinez specifically noted Plaintiff's reports of depressed mood, loss of interest in pleasure and significant changes to weight and/or appetite.  Dr. Martinez indicated that there were reports of sleep disturbance, fatigue, feelings of worthlessness, diminished ability to think, concentrate and make decisions.  Dr. Martinez found that these symptoms caused "significant impairment social and occupationally as the claimant does not engage in social exchange with others and find the day-to-day requirements of sustained employment difficult." AR 450.

  Dr. Martinez opined that Plaintiff had no impairment in the ability to understand, remember, and carry out simple one-or two-step job instructions or in the ability to do detailed and complex instructions.  AR 450.  However, Plaintiff had a marked impairment, due to mood instability, in the ability to relate and interact with co-workers and the public.  AR 450.  He also had marked impairment, due to mood instability, in the ability to maintain concentration and attention, persistence and pace and in the ability to accept instructions from supervisors.  Plaintiff had no impairment in the ability to associate with day-to-day work activity, including attendance and safety, no impairment in the ability to maintain regular attendance in the workplace and perform work activities on a consistent basis and no impairment in the ability to perform work activities without special or additional supervision.  AR 451.

  <u>Dr. Musacco</u>

  On January 29, 2019, Dr. Musacco completed a consultative psychological evaluation.  On mental status examination, Plaintiff was oriented to date, month, and year.  His affect was intense and

angry although his hostility decreased as the evaluation progressed. His speech was organized and goal directed. Plaintiff reported that his emotional functioning was marked by mood swings and he often experienced low energy and irritability. Plaintiff also reported that he had a "short fuse" and little patience. AR 1236. Dr. Musacco indicated that he did not see evidence of delusional belief, but Plaintiff's mood had a "substantial impact on his outlook on life and his relationships with other people." AR 1236. On the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), Plaintiff had relative strength in verbal comprehension and processing speed, but his working memory (attention/concentration) fell in the low average range. His overall performance revealed intact intellectual functioning and a Full-Scale IQ score in the average range. AR 1236-37. On the Wechsler Memory Scale – Third Edition (WMS-III), "[n]early all of the claimant's scores were substantially depressed revealing significant deficits in his immediate and delayed memory skills." AR 1237. His auditory memory was measured in the borderline range revealing relative strengths in his ability to recall auditory information. AR 1237. On the Trailmaking Test, Plaintiff's performance revealed "intact executive functioning skills – he was able to adequately shift his attention between two simultaneous tasks." AR 1238. Dr. Musacco diagnosed Plaintiff with chronic pain and major depressive disorder, opining that Plaintiff met the criteria for major depressive disorder based on his chronically irritable mood. Dr. Masacco noted that Plaintiff's affect was intense and angry consistent with his self-report of irritability supporting the diagnosis of major depressive disorder. AR 1238.

Dr. Musacco also completed a Medical Statement of Ability to Do Work-Related Activities (Mental). Dr. Musacco opined that Plaintiff had moderate restrictions in the ability to understand and remember simple instructions, carry out simple instructions, and make judgments on single work-related decisions. AR 1242. Dr. Musacco further opined that Plaintiff had marked restrictions in the ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. AR 1242. Dr. Musacco indicated for this portion of his assessment to "see mental status and psych testing data – overt impairment in memory and mood." AR 1242. Dr. Musacco additionally opined that Plaintiff had marked restrictions in the ability to interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers and to respond appropriately to usual work situations and to changes in a routine

work setting. Dr. Musacco indicated that these marked restrictions were based on Plaintiff's "significant irritability and impaired anger control." AR 1244. Dr. Musacco also indcted that there were other capabilities (such as the ability to concentrate, persist, or maintain and the ability to adapt or manage oneself) affected by the impairment. AR 1244.

The ALJ accorded little weight to the opinions of Drs. Martinez and Musacco, reasoning as follows:

> These opinions relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, there exist good reasons for questioning the reliability of the claimant's subjective complaints. For example, the record showed the claimant's psychological symptoms were generally controlled with medication. He tended to have increased symptoms when he was noncompliant with medication. Further, despite his noncompliance, the record showed no inpatient psychiatric hospitalizations. Further, the marked limitations are inconsistent with the claimant's ability to interact with the examiners throughout the record. This opinion is also inconsistent with the claimant's admitted activities of daily living, which include independent self-care, cooking, cleaning, driving, spending time with his family, and sustaining a relationship with his girlfriend.

AR 26.

As noted, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject the opinions of the consultative examiners. Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester,* 81 F.3d at 830. If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a

1  nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of
2  either a treating or examining physician. *Id.* at 831.

3  In this instance, there is an apparent dispute as to whether the ALJ was required to provide
4  "clear and convincing reasons" or "specific and legitimate reasons" to discount the opinions of Drs.
5  Martinez and Musacco. Plaintiff asserts that the ALJ was required to provide clear and convincing
6  reasons because there are no other functional assessments in the record that evaluate Plaintiff's
7  limitations resulting from severe mental impairments. (Doc. No. 15 at 11.) The Commissioner
8  generally suggests that the ALJ must provide specific and legitimate reasons to reject the contradicted
9  opinion of an examining physician. (Doc. No. 16 at 9-10.) It is unnecessary to resolve the issue
10 because the Court finds that under either standard the ALJ's reasons to discount the opinions of Drs.
11 Martinez and Musacco were neither specific and legitimate nor clear and convincing.

12 First, the ALJ assigned little weight to opinions of the consultative examiners because they
13 "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant
14 and seemed to uncritically accept as true most, if not all, of what the claimant reported." AR 26.
15 Generally, "[a] physician's opinion of disability premised to a large extent upon the claimant's own
16 accounts of his symptoms and limitations may be disregarded where those complaints have been
17 properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)
18 (internal quotations omitted), citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). However, in
19 the Ninth Circuit, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in
20 the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th
21 Cir. 2017). In *Buck,* the Ninth Circuit explained that "[p]sychiatric evaluations may appear subjective,
22 especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the
23 patient's self-report, as well as on the clinician's observations of the patient." *Id.* (citation omitted).
24 In *Buck*, the consultative examiner's opinion was partially based on the claimant's self-report, but also
25 a clinical interview and a mental status examination. The *Buck* court found that the consultative
26 examiner's partial reliance on the claimant's self-reported symptoms was not a reason to reject his
27 opinion. *Id.*

28

Here, as in *Buck*, Dr. Martinez interviewed Plaintiff and conducted a mental status examination. AR 444-51. Similarly, Dr. Musacco conducted a clinical interview, a mental status examination and performed psychological testing. AR 1235-38. Under Ninth Circuit authority, the consultative examiners' partial reliance on Plaintiff's self-reports is not a reason to reject their opinions. Discounting Dr. Martinez's opinion based on Plaintiff's self-reports is particularly inappropriate because Dr. Martinez expressly found that Plaintiff appeared "genuine and truthful" and there was "no evidence of exaggeration" and "no evidence of manipulation." AR 447. An ALJ does not provide legally sufficient reasons "for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)). *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999) (indicating that examining psychologist should not be faulted for believing plaintiff's complaints where physician did not find any indication the plaintiff was malingering or deceptive).

The parties appear to contend that the ALJ discounted the opinions of Drs. Martinez and Musacco because Plaintiff's symptoms were generally controlled with medications and he had increased symptoms when noncompliant with his medications. However, it is apparent from the ALJ's decision that these statements were proffered as reasons to question the reliability of Plaintiff's subjective complaints, not discount the examining physicians' opinions. In relevant part, the ALJ stated:

> Yet, there exist good reasons for questioning the reliability of the claimant's subjective complaints. For example, the record showed the claimant's psychological symptoms were generally controlled with medication. He tended to have increased symptoms when he was noncompliant with medication. Further, despite his noncompliance, the record showed no inpatient psychiatric hospitalizations.

AR 26. As a result, these are not reasons for rejecting the consultative examiners' opinions.

The ALJ next discounted the marked limitations identified by Drs. Martinez and Musacco because they were "inconsistent with the claimant's ability to interact with the examiners throughout the record." AR 26. However, the ALJ fails to explain how the observation that Plaintiff was able to

13

interact with examiners is inconsistent with Dr. Musocco's conclusion that Plaintiff had marked restrictions in the ability to interact appropriately with the public, supervisors, and co-workers and Dr. Martinez' conclusion that Plaintiff had marked impairments in the ability to relate and interact with co-workers and the public and in the ability to accept instructions from supervisors.  *See Lopez v. Colvin*, No. 1:14-cv-00495-JLT, 2015 WL 5008948, at *6 (E.D. Cal. Aug. 20, 2015) (finding ALJ failed to provide clear and convincing reasons for affording little weight to the physician's assessment of marked social interaction limitations where the ALJ failed "to explain how the observation that Plaintiff was able to interact with the physician and was "generally cooperative" during the examination is inconsistent with the conclusion that Plaintiff is unable to be around groups of people or the public, and exhibited "antisocial traits");  *see also Bernie B. v. Berryhill*, No. CV 16-6661-DFM, 2019 WL 1260624, at *4 (C.D. Cal. Mar. 19, 2019) ("that Plaintiff 'occasionally' sees a friend and could 'interact adequately' with the consultative examiners, AR 13, does not adequately conflict with his reported limitations;" finding limited daily activities reported by plaintiff did not support the ALJ's treatment of the mental health providers' opinions); *Robert L. B. v. Comm'r of Soc. Sec.*, No. C19-150-MLP, 2019 WL 5704675, at *2 (W.D. Wash. Nov. 5, 2019) (finding workplace limitations distinct from plaintiff's ability to interact one-on-one with treatment providers in a medical or examination environment).  Moreover, the ALJ's determination that the marked limitations identified by Drs. Martinez and Musacco were inconsistent with Plaintiff's ability to interact with examiners is not supported by the record.  Dr. Martinez noted that Plaintiff's mood was agitated and he "was irritated by others in the waiting room."  AR 448.  Dr. Musacco found on mental status examination that Plaintiff's affect was intense and angry.  Dr. Musacco also noted Plaintiff's hostility, although it decreased as the evaluation progressed.  AR 1236.  Dr. Musacco expressly found that "Plaintiff's affect was intense and angry consistent with his self-report of irritability supporting the diagnosis of Major Depressive Disorder."   AR 1238.  Dr. Musacco further found that Plaintiff's marked limitations were supported by Plaintiff's significant irritability and impaired anger control.  AR 1244.

       Finally, the ALJ discounted the opinions of Drs. Martinez and Musacco as "inconsistent with the claimant's admitted activities of daily living, which include independent self-care, cooking, cleaning, driving, spending time with his family, and sustaining a relationship with his girlfriend."  AR

14

26. A conflict between a physician's opinion and a claimant's activities of daily living is a legitimate reason to discount that opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). In this case, it is unclear how Plaintiff's ability to engage in self-care, cook, clean or drive are in conflict with Plaintiff's assessed limitations in the ability to interact appropriately with the public, supervisors, and co-workers. *Bernie B.*, 2019 WL 1260624, at *4 (finding limited daily activities reported by plaintiff did not support the ALJ's treatment of the mental health providers' opinions). As to Plaintiff spending time with his family and sustaining a relationship with his girlfriend, the ALJ references only Dr. Musacco's opinion (AR 26) and, presumably, Plaintiff's report to Dr. Musacco that he eats dinner with his family in the evening and visits with his girlfriend before going to bed. AR 1247. However, the ALJ overlooks Plaintiff's report to Dr. Musacco that his social functioning had declined, he "no longer has friendships and he is socially isolated." AR 1246-47. The ALJ also appears to overlook Dr. Musacco's determination that Plaintiff 's mood "has a substantial impact on his outlook on life and his relationships with other people." AR 1247. The ALJ also omits Plaintiff's report to Dr. Martinez that he becomes angry at his girlfriend and two children without provocation (AR 444), his relationships with family and friends are nonexistent (AR 447), and his outside activities are "nonexistent" (AR 447).

For these reasons, the Court finds that the ALJ's evaluation of the opinions of the consultative examiners is not free of legal error or supported by substantial evidence.

**B.     Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare

circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments concerning whether Plaintiff meets or medically equals listings at Step Three of the sequential evaluation or whether the ALJ properly evaluated his subjective complaints, which can be addressed on remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is REVERSED, and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Jeremy Dobbs and against Defendant Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 31, 2021**         /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE